UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

LARRY PARKS,

       Plaintiff,

v.                                 Case No. 3:19-cv-631-MMH-PDB

CORIZON, LLC, et al.,

       Defendants.

_____

## **ORDER**

### **I. Status**

Plaintiff Larry Parks, an inmate in the custody of the Florida Department of Corrections (FDOC), initiated this action on May 28, 2019, by filing a pro se Civil Rights Complaint (Complaint; Doc. 1)[1] pursuant to 42 U.S.C. § 1983 with exhibits (Doc. 2). In the Complaint, Parks presents claims against the following Defendants: Corizon, LLC (Corizon); Centurion of Florida, LLC (Centurion); and four John or Jane Does.[2] Parks, who alleges he

_____

[1] For all pleadings and documents filed in this case, the Court cites to the document and page numbers as assigned by the Court's Electronic Case Filing System.

[2] Corizon has filed bankruptcy. See Suggestion of Bankruptcy (Doc. 122); Order (Doc. 123). In accordance with applicable law, the Court stayed the litigation of Parks' claim against Corizon, and the stay remains in place. See Order (Doc. 123). As such, the Court does not address the claims against Corizon here. Additionally, the Court notes that pursuant to a settlement, the Court has dismissed with prejudice the claims against Defendants Julie Jones, Mark Inch, and Thomas Reimers. See Order (Doc. 106). Parks also voluntarily dismissed without prejudice the claims against

suffers from the hepatitis C virus (HCV), asserts that Centurion and Corizon violated the Eighth Amendment when they allegedly created and implemented a cost-saving policy that sanctioned the delay of medically necessary treatment for Parks' HCV infection. As relief, Parks seeks compensatory and punitive damages.

This matter is before the Court on Centurion's Motion to Dismiss. See Defendants Centurion of Florida, LLC, Rhonda Almanza, Teresa A. Woodal, Elliot E. Perez-Lugo, Daniel P. Cherry, Errol Campbell, and Ernesto L. Toledo Alverio's Motion to Dismiss Plaintiff's Complaint and Incorporated Memorandum of Law (Motion; Doc. 98).[3] Parks filed a response in opposition to the Motion. See Plaintiff's Response to Defendant Centurion's Motion to Dismiss (Response; Doc. 109). He also submitted exhibits in support of the Response. See Docs. 109-1 through 109-2. Centurion's Motion is ripe for review.

---

Defendants Woodrow A. Myers, Jr., Rhonda Almanza, Helen Sneed, Teresa Woodal, E. Perez-Lugo, Daniel Cherry, Erron Campbell, and E.L. Toledo. See Notice of Voluntary Dismissal (Doc. 67); Order (Doc. 107).

[3] Because Parks dismissed without prejudice the claims against Almanza, Woodal, Perez-Lugo, Cherry, Campbell, and Toledo, the Court will only consider arguments raised on behalf of Centurion.

## II. Plaintiff's Allegations[4]

In his Complaint, Parks brings one claim for relief, alleging Centurion and Corizon were deliberately indifferent to a serious medical need when they delayed necessary treatment for Parks' HCV infection in violation of the Eighth Amendment. Complaint at 13. As to the specific underlying facts supporting his claim, Parks asserts that he entered FDOC custody in March 2002. Id. at 8. According to Parks, "he suffered from [HCV] and the disease had escalated to such a level that [he] now has decompensated cirrhosis (f4)." Id. His symptoms include fatigue, depression, joint pain, nausea, chills, shortness of breath, swelling in legs and ankles, and brain fog. Id. Parks maintains Defendants would test his blood for ALT and AST enzymes and tell him that the results "look good." Id. He avers that when he had abnormal blood test results, Defendants informed him that the enzyme levels "would have to remain elevated at least twice over the normal range for two consecutive clinic reviews, before [Defendants] would take further action, but they never did." Id. (emphasis omitted).

---

[4] In considering Centurion's Motion, the Court must accept all factual allegations in the Complaint as true, consider the allegations in the light most favorable to Parks, and accept all reasonable inferences that can be drawn from such allegations. Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003); Jackson v. Okaloosa Cnty., 21 F.3d 1531, 1534 (11th Cir. 1994). As such, the facts recited here are drawn from the Complaint, and may well differ from those that ultimately can be proved.

The United States Food and Drug Administration approved direct-acting antivirals (DAA) for the treatment of HCV beginning in 2013. Id. at 9. Parks alleges that he questioned Defendants about the benefits of DAAs and requested treatment; however, they informed him that he did not require treatment and the "medical administration" would not authorize it because of cost. Id. at 10. According to Parks, FDOC did not update its HCV treatment policy to acknowledge DAAs as the standard of care until 2016. Id. at 11. He states Defendants established and enforced a policy of delaying DAA treatments for inmates with HCV because of the cost of treatment. Id. at 12. As a result of the policy, Parks asserts that his HCV progressed to severe fibrosis. Id.

### III. Summary of the Arguments

In its Motion, Centurion argues that the Court should dismiss the claim against it because (1) Parks failed to properly exhaust his administrative remedies, and (2) he fails to state an Eighth Amendment claim upon which relief can be granted. Motion at 6-17. Parks responds that the Court should not dismiss his claim because: (1) he exhausted his administrative remedies, and (2) he states a plausible claim for relief. Response at 13-24.

## IV. Analysis

## A. Exhaustion of Administrative Remedies

## 1. PLRA Exhaustion

The Eleventh Circuit Court of Appeals has held the exhaustion of administrative remedies by a prisoner is "a threshold matter" to be addressed before considering the merits of a case. Chandler v. Crosby, 379 F.3d 1278, 1286 (11th Cir. 2004); see also Myles v. Miami-Dade Cnty. Corr. & Rehab. Dep't, 476 F. App'x 364, 366 (11th Cir. 2012)[5] (noting that exhaustion is "a 'threshold matter' that must be addressed first") (citation omitted). It is well settled that the Prison Litigation Reform Act (PLRA) requires an inmate wishing to challenge prison conditions to first exhaust all available administrative remedies before asserting any claim under 42 U.S.C. § 1983. See 42 U.S.C. § 1997e(a); Porter v. Nussle, 534 U.S. 516, 532 (2002). A prisoner such as Parks, however, is not required to plead exhaustion. See Jones v. Bock, 549 U.S. 199, 216 (2007). Instead, the United States Supreme Court has recognized that "failure to exhaust is an affirmative defense under the

---

[5] The Court does not rely on unpublished opinions as binding precedent; however, they may be cited in this Order when the Court finds them persuasive on a particular point. See McNamara v. GEICO, 30 F.4th 1055, 1060-61 (11th Cir. 2022); see generally Fed. R. App. P. 32.1; 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

5

PLRA[.]" <u>Id</u>. Notably, exhaustion of available administrative remedies is "a precondition to an adjudication on the merits" and is mandatory under the PLRA. <u>Bryant v. Rich</u>, 530 F.3d 1368, 1374 (11th Cir. 2008). Not only is there an exhaustion requirement, the PLRA "requires proper exhaustion." <u>Woodford v. Ngo</u>, 548 U.S. 81, 93 (2006).

> Because exhaustion requirements are designed to deal with parties who do not want to exhaust, administrative law creates an incentive for these parties to do what they would otherwise prefer not to do, namely, to give the agency a fair and full opportunity to adjudicate their claims. Administrative law does this by requiring proper exhaustion of administrative remedies, which "means using all steps that the agency holds out, and doing so <u>properly</u> (so that the agency addresses the issues on the merits)." <u>Pozo</u>,[6] 286 F.3d, at 1024 (emphasis in original).

<u>Woodford</u>, 548 U.S. at 90. And, "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." <u>Id</u>.

The United States Supreme Court has instructed that "[c]ourts may not engraft an unwritten 'special circumstances' exception onto the PLRA's exhaustion requirement. The only limit to § 1997e(a)'s mandate is the one baked into its text: An inmate need exhaust only such administrative remedies

---

[6] <u>Pozo v. McCaughtry</u>, 286 F.3d 1022 (7th Cir. 2002).

as are 'available.'" Ross v. Blake, 578 U.S. 632, 648 (2016). For an administrative remedy to be available, the "remedy must be 'capable of use for the accomplishment of [its] purpose.'" Turner v. Burnside, 541 F.3d 1077, 1084 (11th Cir. 2008) (quoting Goebert v. Lee Cnty., 510 F.3d 1312, 1322-23 (11th Cir. 2007)).

Because failure to exhaust administrative remedies is an affirmative defense, Defendant bears "the burden of proving that [Parks] has failed to exhaust his available administrative remedies." Id. at 1082. In accordance with Eleventh Circuit precedent, a court must employ a two-step process when examining the issue of exhaustion of administrative remedies.

> After a prisoner has exhausted the grievance procedures, he may file suit under § 1983. In response to a prisoner suit, defendants may bring a motion to dismiss and raise as a defense the prisoner's failure to exhaust these administrative remedies. See Turner, 541 F.3d at 1081. In Turner v. Burnside we established a two-step process for resolving motions to dismiss prisoner lawsuits for failure to exhaust. 541 F.3d at 1082. First, district courts look to the factual allegations in the motion to dismiss and those in the prisoner's response and accept the prisoner's view of the facts as true. The court should dismiss if the facts as stated by the prisoner show a failure to exhaust. Id. Second, if dismissal is not warranted on the prisoner's view of the facts, the court makes specific findings to resolve disputes of fact, and should dismiss if, based on those findings, defendants have shown a failure to exhaust. Id. at 1082-83; see also id. at 1082 (explaining

7

that defendants bear the burden of showing a failure
to exhaust).

Whatley v. Warden, Ware State Prison, 802 F.3d 1205, 1209 (11th Cir. 2015).

At step two of the procedure established in Turner, the Court can consider facts

outside the pleadings as long as those facts do not decide the case and the

parties have had sufficient opportunity to develop the record. Bryant, 530 F.3d

at 1376; see also Jenkins v. Sloan, 826 F. App'x 833, 838-39 (11th Cir. 2020).

Here, Parks submitted grievance records as exhibits to the Complaint. See Doc.

2. The parties neither dispute the accuracy of these grievance records, nor

request an evidentiary hearing. Bryant, 530 F.3d at 1377 n.16. Thus, the Court

considers the grievance records solely for purposes of addressing the parties'

competing contentions regarding exhaustion. In evaluating whether Parks has

satisfied the exhaustion requirement, the Court notes that the Eleventh

Circuit has determined that a "prisoner need not name any particular

defendant in a grievance in order to properly exhaust his claim." Parzyck v.

Prison Health Servs., Inc., 627 F.3d 1215, 1218 (11th Cir. 2010) (citations

omitted).

### 2. Florida's Prison Grievance Procedure

State law "determines what steps are required to exhaust." Dimanche v.

Brown, 783 F.3d 1204, 1207 (11th Cir. 2015); see also Jones, 549 U.S. at 218

8

(stating that "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion"). The FDOC provides an internal grievance procedure for its inmates. <u>See</u> Fla. Admin. Code R. 33-103.001 through 33-103.018. Generally, to properly exhaust administrative remedies, a prisoner must complete a three-step sequential process. First, an inmate must submit an informal grievance at the institutional level to a designated staff member responsible for the specific problem. <u>See</u> Fla. Admin. Code R. 33-103.005. If the issue is not resolved, the inmate must submit a formal grievance at the institutional level. <u>See</u> Fla. Admin. Code R. 33-103.006. If the matter is not resolved through formal and informal grievances, the inmate must file an appeal to the Office of the FDOC Secretary. <u>See</u> Fla. Admin. Code R. 33-103.007. However, under certain specified circumstances, an inmate can bypass the informal-grievance stage and start with a formal grievance at the institutional level. <u>See</u> Fla. Admin. Code R. 33-103.005(1); 33-103.006(3). Or an inmate can completely bypass the institutional level and proceed directly to the Office of the FDOC Secretary by filing a "direct grievance." <u>See</u> Fla. Admin. Code R. 33-103.007(3). Emergency grievances and grievances of reprisal are types of "direct grievances" that may be filed with the Office of the FDOC Secretary. <u>See</u> Fla. Admin. Code R. 33-103.007(3)(a).

9

Florida Administrative Code Rule 33-103.011 provides time frames for the submission of grievances. Informal grievances must be received within twenty days from the date on which the grieved incident or action occurred. See Fla. Admin. Code R. 33-103.011(1)(a). Formal grievances must be received no later than fifteen days from the date of the response to the informal grievance. See Fla. Admin. Code R. 33-103.011(1)(b). Similarly, grievance appeals to the Office of the FDOC Secretary must be received within fifteen days from the date that the response to the formal grievance is returned to the inmate. See Fla. Admin. Code R. 33-103.011(1)(c). According to Rule 33-103.014, an informal grievance, formal grievance, direct grievance, or grievance appeal "may be returned to the inmate without further processing if, following a review of the grievance, one or more . . . conditions are found to exist." Fla. Admin. Code R. 33-103.014(1). The rule provides an enumerated list as "the only reasons for returning a grievance without a response on the merits." See Fla. Admin. Code R. 33-103.014(1)(a)-(y). A grievance can be returned without action if it: is untimely; "addresses more than one issue or complaint;" is "so broad, general or vague in nature that it cannot be clearly investigated, evaluated, and responded to;" is "not written legibly and cannot be clearly understood;" is a supplement to a previously-submitted grievance

10

that has been accepted for review; does not "provide a valid reason for by-passing the previous levels of review as required or the reason provided is not acceptable;" or does not include the required attachments. See Fla. Admin. Code R. 33-103.014(1).

### 3. Parks' Exhaustion Efforts

With the Complaint, Parks provides records of his exhaustion efforts. See Doc. 2. The records show Parks submitted two formal grievances to Union Correctional Institution (UCI) on October 19, 2018. Id. at 4, 17. His first formal grievance (Centurion grievance) stated:

> This formal medical grievance regards FDC's current health care provider Centurion's deliberate decision not to timely honor the accepted means of treatment for Hepatit[i]s "C" via DAA drugs until Hoffer v. Jones mandated the same. As a direct result of the intentional delay, my liver condition worsened and even though I was eventually treated, my liver condition is a result of not providing the accepted treatment in a timely manner. On August 24, 2016[,] Centurion replaced Corizon as FDC health care provider and Centurion was aware of the number of HCV affected prisoners and the policy and custom left in place by Corizon not to evaluate and or treat per the required protocol. As a result thereof I am now an F4 on the fibrosis scale and the liver damage is irreversible.
>
> I contend that I was not treated because of policy, practice and custom of Centurion condoned by the FDC to save money.

11

> Relief Requested: Require Centurion via FDC physician to explain why I was not treated in a timely manner and to notify their insurance representative of the apparent consequences of not having treated me.

Id. at 17. His second formal grievance (Corizon grievance) stated:

> This formal medical grievance regards FDC's prior health care provider Corizon, LLC's then deliberate decision not to honor the June 2014, et al., FBOP Guidelines, and treat me with DAA drugs for my Hepatit[i]s "C." As a result, I am now an F4 on the fibrosis scale and the liver damage is irreversible. I contend that I was not treated because of policy, practice and custom of Corizon, LLC condoned by the FDC to save money.
>
> Relief Requested: Require Corizon[,] LLC via FDC physician to explain why I was not timely treated.

Id. at 4. On October 26, 2018, UCI denied both grievances, noting Parks was "being treated in accordance with FDC policy and procedure." Id. at 5, 18.

On November 2, 2018, Parks appealed the denial of his Centurion grievance. Id. at 19. He stated in pertinent part:

> This is a Central Office Appeal regarding the attached formal medical grievance. I reallege [and] incorporate by reference the facts [and] matters set forth therein [and] without adding any new grounds present the following in form of comment thereon: Not contesting the specific allegation regarding not having been timely treated by Centurion [and] the resulting liver damage, constitutes admission.

12

Regarding not having been timely treated [and] FDC policy to condone Centurion's practice, I note the answer to the attached that treatment is vs. was[] in compliance with FDC procedure. No timely treatment resulted in my liver damage.

Relief Requested: Remains the same[,] require Centurion via FDC physician to explain why I was not treated in a timely manner [and] to notify their insurance representative that claim for untimely treatment is forthcoming.

Id. The Office of the FDOC Secretary provided the following response:

Appeal Returned without Action:

Please be advised that you are outside the timeframe to grieve an issue from 2016 and the Institution should have returned your formal grievance.

Formal Grievances must be received no later than 15 calendar days from: 1. The date on which the informal grievance was responded to; or 2. The date on which the incident or action being grieved occurred.

You are also not to use the grievance process to ask questions, seek information, guidance or assistance.

Just because the Institution failed to return your formal grievance does not negate our office from returning your appeal.

Therefore, your appeal is being returned without action.

Id. at 20.

On November 2, 2018, Parks appealed the denial of his Corizon

13

grievance, stating:

> This request for Central Office Appeal results from denial of the attached formal medical grievance #1810-213-131, denied on 10-30-2018. I reallege [and] incorporate by reference the facts [and] matters set forth in the attached [and] without adding any new grounds state the following in form of comment thereon: Because the answer does not contest the policy practice [and] custom of Corizon, LLC not treating the condition, it is admitted.
>
> You know the FDC condoned Corizon, LLC not following the FBP [and] CDC guidelines to care for my condition with DAAs. Now my liver damage is resulting from cost cutting policy of Corizon LLC [and] condoned by FDC constitutes cause of action. Relief Requested remains the same: Require Corizon[,] LLC via FDC physician to explain why I was not timely treated [and] to notify their insurance.

Id. at 6. The Office of the FDOC Secretary provided the following response:

> Appeal Returned without Action:
>
> Please be advised that you are outside the timeframe to grieve an issue from 2014 and the Institution should have returned your formal grievance.
>
> Formal Grievances must be received no later than 15 calendar days from: 1. The date on which the informal grievance was responded to; or 2. The date on which the incident or action being grieved occurred.
>
> You are also not to use the grievance process to ask questions, seek information, guidance or assistance.
>
> Just because the Institution failed to return your

14

> formal grievance does not negate our office from
> returning your appeal.
>
> Therefore, your appeal is being returned without
> action.

Id. at 7. Parks did not submit any other grievances concerning the denial of treatment for his HCV.[7]

### 4. Turner Step One

Under the first step of the Turner analysis, the Court must review the allegations in the Motion and Response and accept as true Parks' allegations. See Whatley, 802 F.3d at 1209 (quoting Turner, 541 F.3d at 1082). If Parks' allegations in the Response shows a failure to exhaust, then dismissal would be appropriate. See id.

---

[7] Parks attaches other grievances as exhibits to the Complaint and Response. See Docs. 2; 109-1 through 109-2. However, many of the grievances do not concern the denial of treatment for his HCV; therefore, they failed to alert officials to the issues in contention in Parks' Complaint. See Chandler, 379 F.3d at 1287 (noting that the purpose of administrative exhaustion "'is to put the [administrative authority] on notice of all issues in contention and to allow the [authority] an opportunity to investigate those issues.'") (citation omitted). Parks submitted the remaining grievances to the FDOC after he filed the Complaint. As such, they are not pertinent to the Court's determination of whether Parks satisfied the PLRA's exhaustion requirement. See Brown v. Sikes, 212 F.3d 1205, 1207 (11th Cir. 2000) ("[W]hen a state provides a grievance procedure for its prisoners . . . an inmate alleging harm suffered from prison conditions must file a grievance and exhaust the remedies available under that procedure before pursuing a § 1983 lawsuit.") (emphasis added).

The Court now turns to the allegations in the Motion and Response concerning Parks' exhaustion efforts. The parties agree that Parks filed two formal grievances and UCI denied his grievances. Motion at 9; Response at 5-7. Parks subsequently filed appeals that the Office of the FDOC Secretary returned without action because it considered the grievances to be untimely. Id. Centurion asserts Parks did not properly exhaust administrative remedies because he failed to comply with the FDOC's grievance procedure. Motion at 9. However, Parks responds that the FDOC waived its right to enforce the procedural rule when UCI denied his grievances on the merits. Response at 13-14, 16. He also contends the Office of the FDOC Secretary did not properly apply its procedural rule because his claim "is not related to one specific date such that [Parks] had to grieve it within twenty days." Id. at 20. Accepting Parks' view of the facts as true, the Court cannot dismiss the Complaint at the first step of the Turner analysis.

### 5. **Turner** Step Two

As dismissal would not be appropriate based on the allegations in the Motion and Response, the Court next turns to the second prong of the Turner analysis. Here, the Court finds Parks failed to properly exhaust his administrative remedies because he did not comply with the FDOC's grievance

16

procedure. Parks grieved the denial of HCV treatment in 2018 by filing formal grievances at the institutional level, which UCI denied on the merits. Doc. 2 at 4-5, 17-18. However, the Office of the FDOC Secretary returned his corresponding appeals without action based upon a determination that they were untimely. Id. at 7, 20; see Fla. Admin. Code R. 33-103.014(1)(e). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." Woodford, 548 U.S. at 90. Parks did not comply with the FDOC's deadlines when he filed untimely grievances. The FDOC did not waive the procedural defect by denying his formal grievances on the merits because it ultimately returned his appeals without action. See Whatley v. Smith, 898 F.3d 1072, 1083 (11th Cir. 2018) ("[W]e hold that a prison does not waive a procedural defect unless and until it decides the procedurally flawed grievance on the merits at the last available stage of administrative review.") (emphasis added). Therefore, Parks failed to properly exhaust his administrative remedies.

Parks contends that his grievances were timely filed because "his grievances and Complaint do not concern multiple separate episodes, but rather one continuing deprivation of medical care over a period of years." Response at 20 (emphasis omitted). However, his argument is unavailing.

17

"'Courts must give deference to prison officials regarding the interpretation and application of their own grievance procedures so long as the procedures provide inmates with a meaningful opportunity to present grievances,' and provided that the application of the grievance rules was not 'clearly erroneous, arbitrary or intended to prevent plaintiff from exercising his right of access to the courts.'" Stephens v. Corizon, LLC, No. 3:20-cv-70-BJD-PDB, 2021 WL 2981317, at *8 (M.D. Fla. July 14, 2021)[8] (quoting Jones v. Frank, No. 07-cv-141-BBC, 2008 WL 4190322, at *3 (W.D. Wis. Apr. 14, 2008)); see also White v. Moore, 789 So. 2d 1118, 1120 (Fla. 1st DCA) (2001) (noting that courts defer to an agency's interpretation of a rule that it administers).

The Court finds that the FDOC's interpretation of its rule was not clearly erroneous, arbitrary, or intended to prevent plaintiff from exercising his right of access to the courts. A formal grievance may be returned without action if "[t]he formal grievance was not received within 15 calendar days of the date on which the incident or action being complained about occurred, if an informal grievance was not filed . . . ." Fla. Admin. Code R. 33-103.014(1)(e). In his

___

[8] The Court notes that although decisions of other district courts are not binding, they too may be cited as persuasive authority. See Stone v. First Union Corp., 371 F.3d 1305, 1310 (11th Cir. 2004) (noting that, "[a]lthough a district court would not be bound to follow any other district court's determination, the decision would have significant persuasive effects.").

18

Corizon grievance, Parks stated his grievance concerned Corizon's refusal "to honor the June 2014 . . . FBOP guidelines and treat [him] with DAA drugs . . . ." Doc. 2 at 4. While UCI denied the Corizon grievance on the merits, the Office of the FDOC Secretary determined on appeal that Parks was "outside the timeframe to grieve an issue from 2014." Id. at 7. Similarly, in the Centurion grievance, Parks grieved that Centurion continued Corizon's policy of denying DAA treatments and noted Centurion replaced Corizon as the healthcare provider for FDOC inmates on August 24, 2016. Id. at 17. On appeal, the Office of the FDOC Secretary determined that Parks was "outside the timeframe to grieve an issue from 2016." Id. at 20. Considering the record, the Court cannot find that the FDOC arbitrarily interpreted its rules by counting fifteen days from June 2014, when Corizon declined to adopt the Federal Bureau of Prisons guidelines, or fifteen days from August 24, 2016, when Centurion assumed Corizon's contract and continued its refusal to adopt the guidelines. Notably, the Centurion grievance makes clear that by the time Parks submitted it, he was already receiving DAA treatment, and thus could not be timely grieving "one continuing deprivation." Response at 20.

Although Parks cites to Kinard v. Centurion of Fla., LLC, No. 3:19-cv-490-J-34JRK, 2020 WL 3542650, at *1 (M.D. Fla. June 30, 2020), to support

his argument, the facts in <u>Kinard</u> are distinguishable from the facts of this case. In <u>Kinard</u>, the plaintiff filed his grievance while the FDOC continued to deny him DAA treatment. <u>Id.</u> at *9. As such, "[p]rison officials were still capable of resolving the ongoing deprivation of Kinard's medical care." <u>Id.</u> The FDOC also did not find the grievance to be untimely filed on appeal. <u>Id.</u> Here, as Parks admitted in the Centurion grievance, he had already received treatment for HCV. Doc. 2 at 17 ("As a direct result of the intentional delay, my liver condition worsened and <u>even though I was eventually treated</u>, my liver condition is a result of not providing the accepted treatment in a timely manner.") (emphasis added). UCI's responses to the Centurion and Corizon grievances confirmed that he had "completed the treatment for Hepatitis C" such that the deprivation of care was not ongoing. <u>Id.</u> at 5, 18. And, while UCI rejected Parks' grievances on the merits, the Office of the FDOC Secretary found his grievances to be untimely. <u>Id.</u> at 7, 20.

To the extent Parks alleges the grievance procedure was not available to him such that he could not timely file a grievance, the record demonstrates otherwise. Parks filed numerous grievances from February 2014 to February 2022. <u>See</u> Doc. 109-1. In turn, the grievance procedure was available to Parks. Based on the above, the Court determines Parks failed to properly exhaust

available administrative remedies, and Centurion's Motion to Dismiss is due to be granted on that basis.

## B. Centurion's Remaining Argument

Because Parks' claim against Centurion is due to be dismissed for failure to satisfy the PLRA's exhaustion requirement, the Court need not address Centurion's argument that Parks fails to state a claim for relief. Therefore, as to that issue, the Motion is due to be denied without prejudice.

Accordingly, it is now

**ORDERED:**

1.     Defendant Centurion's Motion to Dismiss (Doc. 98) is **GRANTED** to the extent Defendant seeks dismissal for Parks' failure to exhaust his administrative remedies. In all other respects, the Motion is denied without prejudice.

2.     Plaintiff Larry Parks' claim against Centurion is **DISMISSED WITHOUT PREJUDICE**. The Court directs the **Clerk** to terminate Centurion as a Defendant in the case.

3.     Pursuant to Federal Rule of Civil Procedure 54(b), there being no just reason for delay, the **Clerk** shall enter judgment in accordance with this order.

4.     Parks' Request for Documents (Doc. 126) is **DENIED**. Parks is advised that his <u>in forma pauperis</u> status does not entitle him to free copies. The cost for photocopies is $.50 per page. The Complaint is 14 pages, Centurion's Motion to Dismiss is 25 pages, and Corizon's Motion to Dismiss is 20 pages. Any future request for copies to the Clerk must be accompanied by the appropriate payment.

**DONE AND ORDERED** at Jacksonville, Florida, this 12th day of June, 2023.

**MARCIA MORALES HOWARD**
United States District Judge

Jax-9 6/6
c:     Larry Parks, #581520
       Counsel of record

22